BP:bp

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-23396

UNITED STATES OF AMERICA,

    Plaintiff,

v.

THIRTY THOUSAND DOLLARS
($30,000.00) IN MONEY ORDERS,

    Defendant.
_____/

**CIV - SEITZ**

**MAGISTRATE BANDSTRA**

## COMPLAINT FOR FORFEITURE IN REM

    Plaintiff, United States of America, hereby files this Complaint for Forfeiture in Rem and states:

    1. This is a civil action for forfeiture in rem of THIRTY THOUSAND DOLLARS ($30,000.00) IN MONEY ORDERS ("defendant currency").

    2. This Court has jurisdiction and venue over this action pursuant to 28 U.S.C. §§ 1345, 1355(a), (b)(1) and 1395 in that the defendant currency was seized in the Southern District of Florida and will remain within the District during the pendency of this action.

    3. The United States seeks forfeiture of the defendant property pursuant to 18 U.S.C. § 981(a)(1)(A), arising from violations of 18 U.S.C. §§ 1956 and 21 U.S.C. § 881(a)(6).

## **FACTS**

4. In or about early 2002, agents of the Federal Bureau of Investigation ("FBI") and the High Intensity Drug Task Force Agency ("HIDTA") (collectively referred to as agents) initiated an investigation into possible money laundering and narcotics trafficking activities of Jairo Rodrigo REYES ("REYES").

5. On July 3, 2002, pursuant to information received from an employee of the United Parcel Service in Puerto Rico, agents seized a United Parcel Service overnight package addressed to REYES, which contained approximately $27,000.00 of narcotics proceeds in $500.00 denomination money orders.

6. On July 8, 2002, agents conducted a consent search of REYES' residence located at 4080 Pine Ridge Lane, Weston, Broward County, Florida.

7. During the consent search, Reyes directed agents to $20,000.00 in money orders which he later indicated were narcotics proceeds.

8. The agents also found approximately five kilograms of heroin in a box in an upstairs bedroom closet.

9. After Reyes was given his *Miranda* rights, he voluntarily made the following statements:

    a. that in April 2002, an individual from Colombia contacted him;

    b. that this individual asked him to pick up U.S. currency in Puerto Rico, convert the currency to money orders and

2

        send the money orders to individuals and businesses in the United States;

c.   that he believed the currency to be narcotics proceeds and believed that he was laundering the currency to conceal its origin;

d.   that he asked his friend Jason RUIZ ("RUIZ"), who resides in Puerto Rico, to help him to purchase money orders with the currency;

e.   that he and RUIZ then picked up approximately $20,000.00 in U.S. currency, purchased money orders with the currency and sent the money orders to individuals and businesses in the United States;

f.   that the same individual from Colombia then contacted him three more times to pick up larger amounts of currency in Puerto Rico, to purchase money orders with the currency and send the money orders to individuals and businesses in the United States;

g.   that he asked RUIZ, who resides in Puerto Rico, to complete the transactions for him and RUIZ agreed;

h.   that RUIZ recruited his (RUIZ's) friend Emilson AYALA ("AYALA") to help purchase money orders with the currency and send the packages;

i.   that the package addressed to REYES, which was seized in Puerto Rico on or about July 3, 2002, was one of several which were recently sent by RUIZ and AYALA; and

j.   that he was instructed to structurally deposit the money orders which he received into different bank accounts and that he believed the other recipients were to do the same.

10.   REYES provided agents with a list of the package service tracking numbers associated with the individual packages, recipient names and the dollar value that was to be contained in each package.

11. Subsequently, agents seized five of the six packages on the list.

12. Each of the seized packages was addressed as REYES has indicated.

13. Additionally, each package contained money orders totaling the dollar amounts indicated by REYES.

14. According to the list provided to agents by REYES, one of the packages was addressed to Jorge SERRANO ("SERRANO") and was supposed to contain $50,000.00 in money orders.

15. Agents went to SERRANO's residence and SERRANO surrendered 50 money orders in $1,000.00 denominations, which he received in a package from Puerto Rico.

16. SERRANO voluntarily made the following statements:

   a. that he did not know the sender of the package, the identity of the owner of the funds, or what he was supposed to do with the money orders;

   b. that he had been arrested by the Miami-Dade Police Department for money laundering violations in May 2002; and

   c. that he believed that the money orders he received were related to narcotics trafficking.

17. Additionally, according to the list provided by REYES, one of these packages was a Federal Express Package bearing tracking number 834385170224, addressed to Miguel BALLESTAS ("BALLESTAS"), 1020 SW 13th Avenue, Miami, Florida, and was supposed to contain $30,000.00 in money orders.

4

18. On July 9, 2002, agents went to BALLESTAS' residence located at 1020 SW 13th Avenue, Miami, Florida.

19. BALLESTAS consented to a search of his residence and agreed to speak with agents.

20. Pursuant to the consent search of BALLESTAS' residence, a Federal Express package, addressed to Miguel BALLESTAS, 1020 SW 13TH Avenue, Miami, Florida, bearing tracking number 8343 8517 0224 0402, was found on the dining table.

21. The package label listed the sender as Emilio AYALA, Maximo Gomez #36B, Cabo Rojo, Puerto Rico, and the contents as photographs with "NDV" written into the dollar value area.

22. "NDV" is known to be an abbreviation for "no dollar value."

23. BALLESTAS voluntarily made the following statements to agents:

    a. that he had picked the package up at the FED-EX office in downtown Miami the previous night;

    b. that the package contained thirty (30) money orders in denominations of $1,000.00 each, issued to him;

    c. that he did not know who AYALA was, nor did he know why AYALA was the sender of the package;

    d. that the money orders were sent to him by Ricardo REGUILLO ("REGUILLO"), a close business associate, who manages BALLESTAS' cattle ranches in Barranquilla, Colombia;

    e. that REGUILLO had called him on July 4, 2002 and told him to expect $30,000.00 as proceeds from the sale of some cattle;

5

    f.    that he could not trace the money ($30,000.00) to a particular transaction, because he does not get involved in the day to day management of his ranches in Barranquilla, Colombia and Venezuela;

    g.    that he was instructed by REGUILLO to keep $5,000.00 and deposit the remaining $25,000.00 into REGUILLO's bank account, number 507-264-422-00546-2, at Banco Ganadero, Oficina Vivero, Calle 77 y Carrera 68, Barranquilla, Colombia;

    h.    that he and REGUILLO spoke again on Monday, July 8th, 2002 at which time REGUILLO told him that he might be receiving $20,000.00 instead of $30,000.00;

    i.    that he speculated that AYALA sent him the money orders on REGUILLO's behalf and that AYALA is probably a business associate of REGUILLO;

    j.    that REGUILLO has never sent him cash or money orders in the past via FED-EX or any mail service; and

    k.    that he did not know how to proceed with the money orders and had put ten of them (totaling $10,000.00) in his wallet because he was planning to visit a bank to find out what to do with them.

24. BALLESTAS then produced ten of the money orders (totaling $10,000.00) from his wallet and the remaining twenty (totaling $20,000.00) from a plastic grocery bag lying on the floor, next to the dining table.

25. Also found during the search of the residence in a brown accordion folder were numerous bank account records and other documents, including 19 white business envelopes held together by a rubber band, most of which contained receipts of deposits to several bank accounts in multiple banks.

26. BALLESTAS advised that all the accounts were his and that he handled all the deposits himself.

6

27. REYES was indicted in <u>United States v. Jairo Rodrigo Reyes</u>, Case no. 02-20608-Cr-FAM, on charges of conspiracy to conduct financial transactions affecting interstate and foreign commerce with proceeds of narcotics trafficking and possession of heroin in violation of 18 U.S.C. § 1956 and 21 U.S.C. § 841. On September 19, 2002 REYES pled guilty to those charges. His sentencing is set for November 27, 2002.

28. On September 4, 2002, BALLESTAS filed a claim in the administrative forfeiture proceeding for the money orders.

## COUNT I (MONEY LAUNDERING)

29. Plaintiff realleges paragraphs 1 through 28 above as if fully set forth herein.

30. 18 U.S.C. § 1956(a)(1)(B) prohibits any person, knowing that property involved in a financial transaction represents the proceeds of some form of unlawful activity, to conduct or attempt to conduct a financial transaction which in fact does represents the proceeds of specified unlawful activity, knowing that the transaction is designed in whole or in part - (i) to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such specified unlawful activity, or (ii) to avoid a transaction reporting requirement under State or Federal law.

31. A "financial transaction" is defined in 18 U.S.C. § 1956 to mean a "transaction" which in any way or degree affects interstate or foreign commerce and involves the movement of funds

by wire or other means or involves one or more "monetary instruments." The term "monetary instrument" means the coin or currency of the United States or any other country, travelers' checks, personal checks, bank checks, and money orders. The term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution, includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected.

32. The term "specified unlawful activity" means any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

33. Pursuant to 18 U.S.C. § 1956(c), the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in 18 U.S.C. § 1956(c)(7).

34. Pursuant to 18 U.S.C. § 981(a)(1)(A), any personal or real property involved in a transaction or attempted transaction in

violation of 18 U.S.C. § 1956, or property traceable to such property, is subject to forfeiture to the United States.

35. Based on the foregoing, the defendant currency constitutes personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, or is traceable to such property, and is thereby forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A).

## COUNT II (PROCEEDS)

36. Plaintiff realleges paragraphs 1 through 28 above as if fully set forth herein.

37. Based on the foregoing, the defendant currency constitutes moneys, negotiable instruments, securities or things of value furnished or intended to be furnished in exchange for controlled substances in violation of 21 U.S.C. § 801, *et seq.*, or proceeds traceable thereto or used or intended to be used to facilitate any violation of subchapter I, Chapter 13 of Title 21, and is thereby forfeit to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, Plaintiff United States of America requests that a warrant of arrest be issued for the defendant property; that the Court direct any and all persons having any claim to the defendant property to file and serve their Verified Claims and Answers as required by 18 U.S.C. § 983(a)(4) and the Supplemental Rules for Certain Admiralty and Maritime Claims, or suffer default thereof,

together with such other and further relief as may be just; that the defendant property be condemned and forfeited to the United States of America for disposition according to law; and that the Plaintiff be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

        Respectfully submitted,

        MARCOS DANIEL JIMENEZ
        UNITED STATES ATTORNEY

By: _____
     BARBARA PAPADEMETRIOU
     Assistant U.S. Attorney
     99 NE 4th Street, 7th Floor
     Miami, Florida 33132-2111
     Fla. Bar No. 0880086
     Tel: (305) 961-9036
     Fax: (305) 536-7599
     E-mail address:
     Barbara.Papademetriou@usdoj.gov

## VERIFICATION

I, VIRGINIA T. GREEN, Special Agent, Federal Bureau of Investigation, hereby declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture <u>in Rem</u> is based upon information known to me, and that the facts alleged therein are true and correct to the best of my knowledge and belief.

EXECUTED, on this 22nd day of November, 2002.

_____
VIRGINIA T. GREEN
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET 02-23396

CIV-SEITZ

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM)

**I.(a) PLAINTIFFS**
UNITED STATES OF AMERICA,

**DEFENDANTS**
THIRTY THOUSAND DOLLARS ($30,000.00) IN MONEY ORDERS

MAGISTRATE
BANDSTRA

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __DADE__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Dade 02-23396 CIV PAS Bandstra

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
BARBARA PAPADEMETRIOU, AUSA
99 NE 4TH STREET, MIAMI, FL (305)961-9036

ATTORNEYS (IF KNOWN)
J.C. Elso, Esq.   (305)446-3377
501 NE 1st Ave., Suite 200 Miami, Fl

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:  (DADE)  MONROE,  BROWARD,  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION**  (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff  **XX**
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN**  (PLACE AN "X" IN ONE BOX ONLY)

- XX 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT**  (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | B☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury – Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | ☐ 791 Empl Ret Inc Security Act | A☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | A☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION**  (CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

18 U.S.C. § 1956 and 21 U.S.C. § 881(a)(6). NARCORTICS PROCEEDS AND MONEY LAUNDERING.

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ YES   ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE  11/22/02

SIGNATURE OF ATTORNEY OF RECORD
Barbara Papademetriou, Assistant U.S. Attorney

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____